NORTH AMERICAN COAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51712, 52492. Promulgated April 30, 1935.

*C. F. Taplin, Esq.*, for the petitioner.
*Allin H. Pierce, Esq.*, for the respondent.

OPINION.

McMahon: At the hearing counsel for respondent stated as follows:

Our theory of the case is that the statute gives the privilege to the Commissioner to check the books of the taxpayer and see whether they did reflect income, and if they did not, then make adjustments that do reflect income.

\*      \*      \*      \*      \*      \*      \*

\* \* \* I think we can agree with him [counsel for petitioner] that we could not set up the statute of limitations in this connection. But, there comes a time when it is unreasonable to carry these longer. There are various factors to be taken into consideration in determining whether they are or are not accounts payable.

\*      \*      \*      \*      \*      \*      \*

The Commissioner has been liberal in its dealings and [has] not attempted to set them up or set up the statute of limitations and throw them into income, but has allowed them to run along until 1927 for the first time. He challenged these items, and said not only are your creditors unknown, or the nature of their claims uncertain, but the statute has now run. Now, what are we going to do, where are we going to draw the line when we are going to throw them into income.

He sees it [He seized] upon this particular year because of the accumulation of all these items and the running of the statute of limitations.

Now, all that he is doing is challenging the fact that they are no longer true accounts payable.

As conceded above by counsel for respondent, the tolling of the statutory period does not *ipso facto* change a deductible liability into taxable income. In *G. M. Standifer Construction Corporation*, 30 B. T. A. 184, the Board stated:

\* \* \* Local statutes are not decisive of what constitutes income, *Burnet* v. *Harmel*, 287 U. S. 103, nor what deductions may be taken. *Weiss* v. *Wiener*, 279 U. S. 333. We are of course bound to follow established state rules of property, *Warburton* v. *White*, 176 U. S. 484, but there is no property right in a statute of limitations which affects the remedy alone and not the obligation. *Campbell* v. *Holt*, 115 U. S. 620. So it has been held that local stat-

utes of limitations barring collection of debts are not sufficient to constitute ascertainment of worthlessness. *Leo Stein,* 4 B. T. A. 1016; *Ralph H. Cross,* 20 B. T. A. 929; affd., 54 Fed. (2d) 781.

This disposes, adversely to petitioner, of its contention that if the statutory period of limitations is invoked to restore accounts payable to income, it must be limited to accounts which are exactly six years old, which is the statutory period of limitation of Ohio, and not to balances which include items more than six years old.

Upon brief the respondent states, and correctly so, that the rule to be drawn from *Great Northern Railway Co.* v. *Lynch,* 292 Fed. 903, and T. D. 3147, 4 C. B. 277 based thereon; *Chicago, Rock Island & Pacific Railway Co.,* 13 B. T. A. 988; affd., 47 Fed. (2d) 990; and *Charleston & Western Carolina Railway Co.,* 17 B. T. A. 569; affd., 59 Fed. (2d) 342, is that "when a reserve or liability account, properly created in an earlier year, has ceased to be a true liability or reserve in a later year, it should be reversed and the amount thereof should be added to the income of the year when reversed."

In this proceeding the petitioner did not reverse the items on its books of account until 1931. However, in that year when it reversed the items it does not appear that the petitioner determined that such accounts should be reversed because prevailing conditions disclosed that they had ceased to be liabilities in 1931, but, as stated by its counsel, this was done by the petitioner, after the notices of deficiency herein had been received, at his suggestion made to petitioner and the Bureau in an attempt to "settle this question with the Department in view of the fact that four different years involved the same question." Presumably, without such suggestion the petitioner would not have reversed the items even in 1931. However, assuming that it had of its own volition reversed the items on its books either in 1931 or in any year prior thereto, such entries on its books would not have been controlling here. The United States Supreme Court, in *Doyle* v. *Mitchell Bros. Co.,* 247 U. S. 179, stated that books of account "are no more than evidential, being neither indispensable nor conclusive. The decision must rest upon the actual facts." The Board stated in *Daily Record Co.,* 13 B. T. A. 458, that "It is well settled that the income of the petitioner is to be determined by actual facts as to which the books of account are only evidential. *Doyle* v. *Mitchell,* 235 Fed. 686; *Southern Pacific Co.* v. *Muenter,* 260 Fed. 837." To the same effect are *James William Everhart,* 26 B. T. A. 318, and cases cited therein.

Nor does the failure of the petitioner to reverse in 1927 and 1928 the items involved, without other evidence showing that the petitioner was in 1927 and 1928 obligated to pay such accounts, establish that such items represented valid and subsisting liabilities in 1927

and 1928. A " failure to record an item as income [does not] permit it to escape taxation when the time arrives that it represents income." *G. M. Standifer Construction Corporation, supra.*

The petitioner emphasizes the fact that it never set up the bar of the statute of limitations against any claim made in respect to any of the items involved herein and this apparently is the only ground upon which rests the petitioner's contention that the items were liabilities in 1927 and 1928. However, this policy alone does not justify indefinitely postponing the restoration of such items to income. While it was testified that petitioner never set up the statute of limitations as a bar to any claim in connection with these accounts, there is no evidence that claims were ever made as to these accounts after the expiration of the statutory period. There is no evidence showing that the petitioner carried out this policy to the extent of expressly acknowledging to any creditor, after the tolling of the statutory period, its liability for any items set up in these accounts. There is no evidence that any item so set up was ever paid after the tolling of the statutory period. There is no evidence indicating that this policy was ever made known to creditors generally and that they relied thereon. All the burden of establishing any claim against the petitioner, as between it and its creditors, for items so set up as liabilities rested upon petitioner's creditors, although these liabilities were set up and retained on its books as liabilities. The petitioner, so far as the record shows, made no effort to establish the identity of those to whom it owed the items so set up or to correct or reverse the entries made, but remained passive in the matter and waited for claims to be made. No claims were made as to the balances involved herein and they were permitted to remain upon the books as liabilities until 1931, when reversed at the suggestion of counsel as heretofore stated. There is no evidence showing that the petitioner was obligated in 1927 and 1928 to pay the items involved in whole or in part or that there were any creditors asserting claims for any of these items.

The evidence presented by the petitioner pertains chiefly to the reasons for the creation of the accounts involved, the nature thereof, the amounts of the entries and the years in which such entries were made. The respondent does not claim that any of the items involved were improperly created or set up as liabilities.

The burden of proof is upon the petitioner to show that the respondent erred in his determination that petitioner's books of account did not clearly reflect income for the reason that the liability accounts involved did not, in 1927 and 1928, represent true liabilities and therefore should be restored to income. The failure of petitioner to sustain this burden requires approval of the respondent's determination in these respects.

The petitioner on brief suggests the question whether the returns for earlier years should not be amended and the income increased therein on the theory that excessive deductions were taken, either erroneously or by virtue of the fact that such deductions never became real through payment. Ordinarily errors should be corrected in the year made. However, while it appears from the evidence that some errors may have been made in earlier years, we are unable to determine what amount or amounts, if any, were set up in error. Furthermore we have before us only the years 1927 and 1928 for redetermination of the deficiencies asserted by the respondent for those years; and hence our jurisdiction herein is limited to those years, to which we here confine ourselves.

The determination of the respondent is therefore approved with an exception as follows: The petitioner, in its returns for the years involved, did not claim depreciation on the Johnson River tipple. However, upon reaudit of such returns, the respondent allowed $10,571.30 in 1927 and $5,285.65 in 1928. It was stipulated by counsel of the parties that petitioner is not entitled to depreciation on the Johnson River tipple as such tipple had been fully depreciated prior to the taxable years here involved. See *North American Coal Corporation*, 28 B. T. A. 807, 848. Effect will be given to this stipulation upon recomputation of the deficiencies under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*