The James Hanley Company v. Commissioner.
James Hanley Co. v. Commissioner
Docket No. 52425
United States Tax Court
T.C. Memo 1956-99; 1956 Tax Ct. Memo LEXIS 189; 15 T.C.M. (CCH) 509; T.C.M. (RIA) 56099; April 30, 1956
A. Peter Quinn, Jr., Esq., Hospital Trust Building, Providence, R.I., for the petitioner. James R. McGowan, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax and declared value excess profits tax as follows: Year
Tax
Deficiency
1943
Income
$25,341.92
1943
Declared value excess
profits
1,659.48
1944
Income
36,089.87
1945
Income
11,700.46
The Commissioner has conceded that the petitioner is entitled to a greater net operating loss deduction in 1945 than the deficiency notice recognizes. Findings of Fact The facts stipulated by the parties are incorporated herein by this reference. The petitioner is a Rhode Island corporation, incorporated in 1824, and has its principal office *190 and place of business at Providence, Rhode Island. It is a brewer of lager and ale, both hereinafter called beer, which it sells only to wholesalers. The petitioner reports income on the accrual method. It filed its income tax returns for the taxable years 1943, 1944 and 1945 with the then collector for Rhode Island. The petitioner sells some of its beer in returnable bottles and cases. It collects from the wholesaler a deposit of 75 cents on each returnable case of 24 12-ounce bottles, and 75 cents on each returnable case of 12 32-ounce bottles. When a wholesaler returns a case of empty bottles to the petitioner, he receives 75 cents. The petitioner does not sell its returnable cases and bottles to its wholesalers. The wholesalers' deposits have at all times been reflected on the petitioner's books and records as a liability under the designation "Reserve for Returnable Container Deposits" account. The petitioner credits this reserve with 75 cents for each deposit it receives, and as it refunds deposits for each case of bottles returned, it debits the reserve with 75 cents. The deposit of 75 cents was determined by the actual cost of the case and bottles at the time the reserve *191 was set up in 1935 when the petitioner began operations after the repeal of prohibition. The returnable bottles and cases were treated as depreciable assets of the petitioner. The depreciation reserve for such containers maintained by petitioner recognized and embraced some substantial loss and breakage of containers in the possession of the trade. The annual deposits, refunds and consequent bookkeeping accumulations in connection with the reserve for returnable container deposits are as follows: Excess of
Year
Deposits
Deposits
Deposits
Balance in
Ended
Received
Refunded
Over Refunds
Reserve
12/31/35
$ 165,220.58
$ 154,945.24
$ 10,275.34
$ 10,275.34
12/31/36
411,678.75
374,654.54
37,024.21
47,299.55
12/31/37
625,477.75
614,064.61
11,413.14
58,712.69
12/31/38
655,939.50
644,006.39
11,933.11
70,645.80
12/31/39
627,859.12
628,305.90
(446.78)
70,199.02
12/31/40
557,268.77
561,377.45
(4,108.68)
66,090.34
12/31/41
603,335.36
595,757.20
7,578.16
73,668.50
12/31/42
666,152.06
637,016.05
29,136.01
102,804.51
12/31/43
1,124,684.73
1,028,141.83
96,542.90
199,347.41
12/31/44
1,587,518.30
1,531,104.31
56,413.99
255,761.40
12/31/45
1,723,984.85
1,706,021.36
17,963.49
273,724.89
12/31/46
1,671,815.76
1,631,361.94
40,453.82
314,178.71
12/31/47
942,631.31
1,022,841.96
(80,210.65)
233,968.06
12/31/48
662,056.18
703,017.05
(40,960.87)
193,007.19
12/31/49
692,595.43
727,763.48
(35,168.05)
157,839.14
12/31/50
590,947.34
589,950.21
997.13
158,836.27
12/31/51
515,141.95
533,000.65
(17,858.70)
140,977.57
12/31/52
496,191.96
490,027.19
6,164.77
147,142.34
12/31/53
433,925.86
445,336.20
(11,410.34)
135,732.00
12/31/54
361,163.38
361,038.82
124.56
135,856.56
TOTALS
$15,115,588.94
$14,979,732.38
$135,856.56
$135,856.56
*192 As of December 31, 1942, petitioner's experience with its reserve showed that out of the total deposits in all years of $4,312,931.89 it had refunded to customers 97.61636603 per cent, and that it had on hand $102,804.51, or 2.38363397 per cent of the total deposits through 1942. As of December 31, 1945, the petitioner's experience with its reserve showed that out of total deposits in all years of $8,749,119.77 it had refunded to customers 96.87140082 per cent, and that it had on hand $273,724.89, or 3.12859918 per cent of total deposits through 1945. At no time prior to the determination of deficiency herein did the petitioner make an attempt to determine the amount of its real liability to customers on account of refunds of deposits for returnable containers. No part of the reserve for customer deposits has ever been transferred to income. The Commissioner "determined that the Reserve for Container Deposits Account carried on [the] books exceeded the indicated liability to refund such deposits in the following amounts, which [were] therefore added to income reported for the years shown: Year
Amount
1943
$20,444.72
1944
28,858.19
1945
31,338.90"
*193 Petitioner has never reported as income any part of the deposits in this reserve account although it was pointed out to petitioner's management by its accountant as early as 1935 that a portion of the reserve would never have to be refunded to its customers, and the management was advised by him in his audit report for 1943 that "there is a certain element of profit included in this reserve, but how much, it is impossible to definitely determine." Opinion KERN, Judge: The issue before us in this case is whether the respondent erred in his action, undertaken pursuant to section 41 of the Internal Revenue Code of 1941, in transferring from the petitioner's "Reserve for Returnable Container Deposits" Account and adding to petitioner's reported income the amounts of $20,444.72, $28,858.19, and $31,338.90 for the years 1943, 1944, and 1945, respectively. The respondent also added certain amounts to petitioner's income for the years 1946, 1947, and 1948 from the same account. However, those years and the correctness of respondent's actions taken in relation thereto are not before us in this proceeding. No deficiencies were determined with regard to these latter *194 years. With regard to 1947, the respondent added to petitioner's income from this account the sum of $17,135.32 and reduced by this amount the net operating loss of petitioner carried back to 1945 as a net operating loss deduction. On brief, the respondent concedes error as to this action with regard to 1947 and concedes that the net operating loss deduction available to petitioner for 1945 should not be diminished by this amount of $17,135.32. Consequently, we reiterate and emphasize, we are concerned in this proceeding only with the question of whether the respondent erred in his specific actions taken with regard to the three years before us, and express no views as to the correctness of his actions and determinations relating to the years 1946, 1947, and 1948. [1]
*195 Respondent argues that his actions with regard to the taxable years before us are justified under Fort Pitt Brewing Co., 20 T.C. 1, affd. 210 Fed. (2d) 6. Petitioner argues that the instant case is distinguishable from the Fort Pitt Brewing Co., case in that the taxpayer's container reserve in the latter case steadily increased until a year five years after the taxable years there involved, while in the instant case the reserve began to decline in the second year after the last taxable year here involved, and in that the petitioner in the instant case proposed, after the issuance of the determination of deficiency herein, that certain amounts (smaller than those determined by respondent) be added to its income in each of the taxable years in lieu of those amounts added by respondent, which petitioner contends represent a "fair approximation" within the meaning of the opinion of the Court of Appeals in the Fort Pitt Brewing Co. case. [2]
*196 It is our opinion that the Fort Pitt Brewing Co. case is not distinguishable in principle from the instant case and that the issue herein, stated with particularity in the first paragraph of this opinion, should be decided on the authority of that case in favor of respondent. Prior to the first of the three taxable years the petitioner had had eight years' experience with its "Reserve for Returnable Container Deposits" Account and had seen it increased from $10,275 to $102,804. During the taxable years it increased to $273,724. Petitioner used an accrual method of accounting. Its accountant pointed out in 1943 that some profit was included in this reserve. For the same reasons stated in detail in Fort Pitt Brewing Co., supra, it was "a clear and rather extreme case of accounting practice resulting in a substantial distortion of the picture of the taxpayer's income," which "called for the corrective function and powers of the Commissioner under the provisions of Section 41 * * *." Petitioner has never reported as income any "reasonable amount" of such deposits, but has merely proposed some annual amounts after the respondent had taken action under section 41 as indicated in his *197 determination of deficiency, to be substituted for the amounts determined to be income by respondent. The question is not whether these amounts proposed by petitioner would have been reasonable if they had been taken into petitioner's income in the taxable years, but whether respondent's action in adding to petitioner's income for 1943, 1944, and 1945 the respective amounts of $20,444.72, $28,858.19 and $31,338.90 was "reasonable and proper." In the light of petitioner's experience during the periods 1935 through 1942 and 1935 through 1945 in connection with this reserve account, we are unable to say that respondent's action with regard to the taxable years before us was not reasonable and proper. Upon this question, petitioner's experience in connection with this reserve after 1946 is not pertinent. See Lewyt Corporation v. Commissioner, 349 U.S. 237. Decision will be entered under Rule 50. Footnotes
1. With regard to these years there may be present the question suggested by the Court of Appeals in Fort Pitt Brewing Co. v. Commissioner, 210 Fed. (2d) 6, 11↩, in the following language: "* * * it should be pointed out that the rather offhand device of simply requiring that any excess of deposits over refunds during the taxable year be reported as income cannot fairly be continued indefinitely, or very long, on no more showing than is in this record. Indeed, the point must be reached rather quickly where the bookkeeping reserve for past years is not unreasonably large, and thereafter a small percentage of deposits received during the taxable year itself will suffice without more to reflect the income derived during that year from dealings with containers. * * *"
2. The petitioner, having decided that one-half of the reserve account as of December 31, 1953, or $67,866, should be retained in the reserve, proposes to transfer the other one-half to income and to allocate it to all of the years 1935 to 1953, inclusive, and to compute the annual allocation by multiplying the percentage of annual credits to total credits by the total amount to be transferred. Thus petitioner would allocate to the years 1943, 1944, and 1945 the respective amounts of $5,173.22, $7,302.11, and $7,929.83.↩