## ORANGE SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10405.

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1942.

E. Barrett Prettyman and Raymond Sparks, both of Washington, D. C., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Joseph M. Jones, Sp. Assts. to Atty. Gen., J. P. Wenchel, Chief Counsel, and John T. Rogers, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

One Giles on March 1, 1913, owned Florida land then worth $5,700. In 1926 he conveyed it to Beeman for notes, $20,-000 falling due annually thereafter, in aggregate amount of $98,700, secured by a mortgage of the land. Giles did not report the sale or any income from it, for the year 1926. A revenue agent in 1927 by examination of the real estate records became familiar with the conveyance, but did not report it to the Commissioner or suggest alteration of the tax return of Giles. Matters so stood, no collection having been made on the notes, till in 1930 Giles formed the taxpayer, Orange Securities Corporation, and transferred the notes and mortgage to it in return for more than eighty percent of its stock, which he caused to be issued to members of his family, except one share which he retained. The notes were sued and after litigation by a compromise $80,000 of value was realized by taxpayer in 1936. The Board of Tax Appeals held the gain realized was $80,000 less the 1913 value of $5,700. The correctness of that holding is the question here.

■ The transfer of the notes to the taxpayer for its stock was a non-taxable one. Revenue Act of 1928, Sect. 112(b)(5), 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 377. The transferee accordingly took the notes with the same cost basis as they had in Giles' hands. Section 113(a)(8). See, also, Revenue Act of 1936, Sect. 113(b)(2)(A), 49 Stats. 1648, 26 U.S.C.A. Int.Rev.Code § 113(b)(2)(A). Estoppels affecting it which would have operated against Giles follow it into the hands of this transferee. P. A. Birren & Son v. Commissioner, 7 Cir., 116 F.2d 718; Portland Oil Co. v. Commissioner, 1 Cir., 109 F.2d 479. The question becomes then: What would be the cost basis of Giles if he had not transferred the notes?

■■ Giles made his returns on a cash basis. When he conveyed his lands in 1926 for instalment notes secured only by the land, receiving no money that year, he did in fact receive an altered property which had some value, and might properly have returned the sale as a conveyance of his capital which realized gain or loss. He, however, did not return it; and presuming that he acted honestly, we may suppose he thought the notes had no value beyond that of his land, and hence there was no real sale and no realization of gain or loss until he should collect or sell the notes or

security in the future. He might equally have thought the sale was an instalment sale on which no return of profit was due until cash collections should come in. There is no testimony as to what he thought, and no precise finding by the Board, which, however, assumed the former to be his reason. We judicially know that the Florida land boom which lasted into 1926, had collapsed when tax returns became due in 1927, and Giles might then have very well concluded there was really no effective sale of the land. We do not think it matters what influenced him to return no gain in 1926. The important fact is that he intentionally elected not to do it and the revenue agent who learned the facts in 1927 must have acquiesced. We do not think it would matter whether there was a mistake of law or fact, or both. The choice of Giles to defer taxation of his transaction till it got beyond the stage of mere paper profit stood until by the bar of limitation no contrary adjustment of his 1926 taxes could be made. In 1936 when $80,000 was realized, he could not shift his position and claim that the gain should have been returned and taxed in 1926, making no explanation at all of his omission then. While it is true that income taxes are intended to be settled and paid annually each year standing to itself, and that omissions, mistakes and frauds are generally to be rectified as of the year they occurred, this and other courts have recognized that a taxpayer may not, after taking a position in one year to his advantage and after correction for that year is barred, shift to a contrary position touching the same fact or transaction. When such a fact or transaction is projected in its tax consequences into another year there is a duty of consistency on both the taxpayer and the Commissioner with regard to it, whether or not there be present all the technical elements of an estoppel. Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622; Hartwell Mills v. Rose, Collector, 5 Cir., 61 F.2d 441; Commissioner v. Dallas Title & Guaranty Co., 5 Cir. 119 F.2d 211; Moran v. Commissioner, 1 Cir., 67 F.2d 601; Portland Oil Co. v. Commissioner, 1 Cir., 109 F.2d 479; Doneghy v. Alexander, Collector, 10 Cir., 118 F.2d 521. Since Giles could not in 1936 have asserted a change of his cost base through the transaction of 1926, this taxpayer cannot.

The judgment of the Board of Tax Appeals is affirmed.